FILED
CLERK

3/16/2016

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

1
CANON U.S.A. INC.,                          Docket 15-cv-06015-DRH-AYS

2
                          *Plaintiff,*       United States Courthouse

3
              v.                             Central Islip, New York

4
F & E TRADING LLC et al,
                                             February 25, 2016
5
                          *Defendants.*      10:38:51 am - 10:58:25 am

6

7                         TRANSCRIPT FOR CIVIL CAUSE
                            - INITIAL CONFERENCE -
                      BEFORE THE HONORABLE ANNE Y. SHIELDS
8                       UNITED STATES MAGISTRATE-JUDGE

9
A P P E A R A N C E S :

10
*For Plaintiff:*             DAI WAI CHIN FEMAN, ESQ.
                             Dorsey & Whitney LLP
11                           51 West 52nd Street
                             New York, New York 10019-6119
12                           (212) 415-9345; (646) 607-5913 fax
                             chinfeman.daiwai@dorsey.com
13

14   *For Plaintiff:*        BRUCE R. M. EWING, ESQ.
                             Dorsey & Whitney LLP
15                           51 West 52nd Street
                             New York, New York 10019-6119
16                           (212) 415-9206; (212) 953-7201 fax
                             ewing.bruce@dorsey.com
17

18   *For Defendants:*       STEVEN ERIC FRANKEL, ESQ.
                             Goldberg & Rimberg PLLC
19                           115 Broadway, Suite 302
                             New York, New York 10006
20                           (212) 697-3250; (212) 227-4533 fax
                             sfrankel@grlawpllc.com
21

22   *Transcriber:*          AA Express Transcripts
                             195 Willoughby Avenue, Suite 1514
23                           Brooklyn, New York 11205
                             (888) 456-9716; (888) 677-6131 fax
24                           aaexpress@court-transcripts.net

25
             *(Proceedings recorded by electronic sound recording)*

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*      2

1          COURTROOM DEPUTY:  Calling 15-cv-6015, Canon U.S.A.

2   Inc. v. F & E Trading LLC et al.  Please state your appearances

3   for the record.

4          MR. FEMAN:  Dai Wai Chin Feman, Dorsey & Whitney, for

5   the Plaintiff, Cannon U.S.A..  And I'm here with my colleague,

6   Bruce Ewing.

7          THE COURT:  Good morning.

8          MR. EWING:  Good morning.

9          MR. FRANKEL:  Good morning.  Steven Frankel, from

10  Goldberg & Rimberg, PLLC, for the Defendants.

11          THE COURT:  Good morning.

12          MR. FRANKEL:  Good morning.

13          THE COURT:  So, this is a trademark case.  Let me ask

14  quickly the Plaintiff whether or not all of the Defendants have

15  been served, everybody in the case?

16          MR. FEMAN:  Yes.

17          THE COURT:  Okay.  And I think there's an issue as to

18  the individual Defendant, right?

19          MR. FEMAN:  Correct.  The individual has moved to

20  dismiss, and we filed an opposition brief.

21          THE COURT:  Okay.  And that's not yet fully briefed,

22  and that's before Judge Hurley, right?

23          MR. FRANKEL:  That's correct, Your Honor.

24          THE COURT:  Okay.  So, that's where you are.  But you

25  can still move on with the case.  The Plaintiff is alleging that

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*        3

1    these are gray market goods?

2            MR. FEMAN:  That's correct.

3            THE COURT:  And is there an allegation that these

4    goods are counterfeit?  Or in some way not what they're supposed

5    to be?

6            MR. FEMAN:  There are allegations that the goods are

7    materially different in various regards.

8            THE COURT:  Okay.  And is this still going on?

9            MR. FEMAN:  To Canon's knowledge, it is.

10            THE COURT:  Okay.  How about Defendants?  It's still

11    going on?

12            MR. FRANKEL:  My understanding is that the Defendants

13    are still selling the gray market goods.  There is a debate as

14    to how many of the goods, or what amount of goods may actually

15    have any kind of differences, or whether those differences are

16    material.  And there's also an issue about the disclaimers that

17    the Defendants have on their websites and points of sale where

18    they're selling the goods basically letting the consumers know

19    exactly what it is that they're buying.  Consumers know that

20    they're buying imports.  They don't think they're buying

21    products --

22            THE COURT:  Right.  They know they're buying imports,

23    but it would be your position that they're buying goods that are

24    the same, right?

25            MR. FRANKEL:  The same --

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*      4

1              THE COURT:  You're not warranting against something

2  being counterfeit or --

3              MR. FRANKEL:  Correct.  They're not --

4              THE COURT:  -- somehow not up to what Canon says it

5  is?

6              MR. FRANKEL:  Correct.  They're not counterfeit;

7  they're Canon products.

8              THE COURT:  Right.  And it's your position that these

9  goods are the exact goods as what Canon sells here; they just

10  come from another source.

11              MR. FRANKEL:  Correct.  And if there are any

12  differences, any minor differences, or whatever differences,

13  those are disclaimed at the point of sale, so the consumer knows

14  what they're buying.

15              THE COURT:  Well, I guess that's what the issue is,

16  right?

17              MR. FRANKEL:  Correct.

18              THE COURT:  So the question is what is the nature of

19  the goods, right?  If it's the same goods, it's one thing, and

20  if it's not, it's certainly something else.  So that's what the

21  discovery is looking at in this case, right?

22              MR. FEMAN:  That's our position, yes.

23              THE COURT:  Okay.

24              MR. FRANKEL:  That's one of the issues, Your Honor.

25              THE COURT:  It's a big one, right?

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*      5

1          MR. FRANKEL:  That's certainly a major issue, Your

2    Honor.

3          THE COURT:  Okay.  All right.  So, I'm looking at your

4    discovery worksheet, and we've got Plaintiff's proposal and

5    Defendant's proposal?  Is that right?  Yeah, that's what it

6    looks like.  So the Plaintiff's proposal are those dates in

7    court with the deadlines that I suggested?

8          MR. FEMAN:  That's correct.  We worked off their

9    presumptive dates.

10          THE COURT:  Okay.  So I see that the Defendant needs a

11    lot more time.  Everybody's agreeing on Rule 26, right?  And

12    that's March 10.  What do you see as a Rule 26?  That's really

13    not that complicated, right?

14          MR. FEMAN:  Just standard and initial disclosures.

15          THE COURT:  Right.  You're identifying what this is,

16    right?  Other than that, I think you know each other's claims.

17          MR. FRANKEL:  Right.

18          THE COURT:  So March 10 is --

19          MR. FRANKEL:  We don't have any issue with that one,

20    Your Honor.

21          THE COURT:  Well, you shouldn't.  It's more than I

22    usually give.  So that's okay.  Okay.  Phase I discovery.  What

23    are we talking about?  Let me ask the Plaintiff what you have in

24    mind for part of Phase I.  What would you produce?  What would

25    you ask for?

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*      6

1        MR. FEMAN:  So, we would produce the evidence we

2   currently have of the Defendants infringing sales.  Because

3   that's readily available.

4        THE COURT:  Is that an actual product?

5        MR. FEMAN:  Correct.  We have actual specimens.

6        THE COURT:  Okay.  That's good.  So give those over so

7   you can both take a look at that.  What else?

8        MR. FEMAN:  And from our perspective, that's all we

9   would produce that's readily available in Phase I.  From

10  Defendants we request data on what models of gray market cameras

11  they're selling, and what their sales figures are for those

12  models over the past --

13       THE COURT:  Stop for a second.  Let's talk about what

14  exactly the products are that are our issue.  Is it all cameras?

15  Is it copiers?  Let's be clear what we're talking about.

16       MR. FEMAN:  As far as we know right now, it's limited

17  to cameras and camera-related equipment.

18       THE COURT:  And let me ask the Defendant, are those

19  the only Canon products that you are selling?  Distributing?  Is

20  it just cameras?

21       MR. FRANKEL:  I honestly don't know, Your Honor.  I

22  believe this case is limited to the cameras.

23       THE COURT:  Okay.  So you're going to have to find

24  that out --

25       MR. FRANKEL:  Okay.

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*     7

1              THE COURT:  -- as far as Phase I.

2              MR. FRANKEL:  Find out if my client is selling Canon

3   products other than cameras?

4              THE COURT:  Well, anything with Canon's name on it --

5              MR. FRANKEL:  Okay.

6              THE COURT:  -- you will have to disclose to the other

7   side.

8              MR. FRANKEL:  Okay.

9              THE COURT:  What's the statute?  How far do we go back

10  in this case?

11             MR. FEMAN:  There's no state of limitations.  So, we

12  want to go back presumptively at least five years, depending on

13  how long these sales have been going on.

14             THE COURT:  Okay.  That's fine.  So, the Defendant

15  would have to produce something showing which products with the

16  Canon name have been sold by the Defendants in the last five

17  years.  Does the Plaintiff have the information that's on the

18  Defendant's website?  I mean do you see that?  Because you want

19  to see how these are represented, right?

20             MR. FEMAN:  Correct.  We have evidence from the

21  website already.  We know that Canon's trademark is portrayed on

22  the Defendant's website, although it's altered in a certain way

23  so as not to be the same, an accurate representation of the

24  trademark.  But, yes, we do have website records.

25             THE COURT:  They're using your name anyway.

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*        8

1            MR. FEMAN:  Correct.

2            THE COURT:  So, it's clear to anyone that they're

3   using the Canon name and they are distributing or selling

4   products that they say are Canon products, right?

5            MR. FRANKEL:  Correct, Your Honor.  And I don't

6   believe there's an issue of whether they are Canon products.  I

7   don't believe the Plaintiffs are taking the opposite position.

8            THE COURT:  Again, that's the issue.

9            MR. FEMAN:  Correct.  It's that the Defendants aren't

10  authorized resellers of Canon products, and they're selling

11  products that are materially different from those that are

12  legitimately and genuinely sold in the United States.

13           THE COURT:  Okay.  Now, when you say they're not

14  authorized resellers, do you have documents that show what an

15  authorized reseller is?  You know agreements that you might

16  enter into?  People who you think are legitimate reseller?

17           MR. FEMAN:  Sure.  Canon U.S.A. has a nationwide

18  network of independent authorized retail dealers.  And they go

19  through an application process.  And it's very well-known in the

20  marketplace who is and who is not an authorized reseller.  And

21  those who are authorized, are allowed to prominently display

22  that and make it known to the market.

23           THE COURT:  Let me ask the Defendant.  Is there any

24  allegation that your clients are authorized Canon resellers as

25  described by the Plaintiff?

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*     9

1          MR. FRANKEL:  No, there's no allegation that we are

2     authorized.  You know, as a matter of the first-sale doctrine --

3          THE COURT:  Right.  You're just saying that --

4          MR. FRANKEL:  we're still permitted to sell it.

5          THE COURT:  -- that you're selling something that's

6     authentic.

7          MR. FRANKEL:  Correct.

8          THE COURT:  Okay.  All right.  So, I think that the

9     Plaintiff has evidence of the actual product, and you're going

10    to give that product to the Defendant to take a look at.  And I

11    guess the Defendant, if you have any products or anything that

12    shows that it is authentic, that's what you have to talk to each

13    other about.

14         MR. FRANKEL:  We'll talk about -- we'll figure out how

15    that makes sense.

16         THE COURT:  Right.  And then I think the Plaintiff

17    should let the Defendant know, and I would make this as part of

18    Rule 26 disclosure, and if you need until March 25 to do this,

19    that's fine with me.  What I would like you to do is put a

20    statement together saying why those products are not authentic.

21    So, I know you have certain things in the complaint saying you

22    know that they're mismarked or something, but I'd like you to be

23    specific so that the Defendant knows what you're talking about.

24         MR. FEMAN:  Sure.

25         THE COURT:  All right?  And if you could link that up

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*      10

1    to a physical product, I think that would be helpful.  Is there

2    anything that the Defendant would like from the Plaintiff as far

3    as Phase I that you can identify right now?

4              MR. FRANKEL:  Your Honor, at this point, I'm not sure

5    what will be in Phase I and Phase II in terms of that.  And,

6    frankly I'm --

7              THE COURT:  Well, if you had a wish list of what you

8    wanted to ask them for today, what would be on that?

9              MR. FRANKEL:  Well, certainly one of the things that

10   we want is -- one of our defenses here -- well, there are

11   several defenses.  One of them is consumer confusion.  So, we're

12   going to want -- I'm not sure necessarily if it's going to be

13   from the Plaintiffs or from third parties, but in terms of being

14   able to show that there's no actual consumer confusion here, or

15   for them to prove that there is consumer confusion here, that's

16   certainly a major issue.

17             THE COURT:  I think that might go to a later expert

18   discovery situation, right?

19             MR. FRANKEL:  That certainly will -- I agree, that

20   probably will be part of the expert discovery.  But there will

21   be certainly fact discovery that is needed to be able to get to

22   that expert discovery.

23             THE COURT:  And that's confusion as to what's on your

24   website?  You know, your disclaimer?

25             MR. FRANKEL:  Or whether consumers are confused as to

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*      11

1   what they're actually purchasing.

2           THE COURT:  Okay.

3           MR. FRANKEL:  But that is a defense, whether consumers

4   have any confusion as to what they're purchasing.  My

5   understanding is that's the reason for --

6           THE COURT:  So, in that, what I think you should

7   produce at this point is -- I know you said you have a

8   disclaimer on your website.  If you include any disclaimers with

9   the product when you ship it, you should give the Plaintiffs

10  that as well.  What about complaints?  Do they make complaints

11  about products?  Saying that there's something wrong with the

12  Canon products?  Do you have anything like that

13          MR. FRANKEL:  I believe if there were any, there would

14  be feedback on the eBay websites about my clients.  Either eBay

15  or Amazon.  I'm not aware.  I would need to check, but I'm not

16  aware of complaints.

17          THE COURT:  All right.  Well, that raising an

18  interesting issue now that you said eBay.  What about electronic

19  discovery in the case?

20          MR. FRANKEL:  We've discussed that we're going to be

21  putting together a protocol for electronic discovery.

22          THE COURT:  Okay.  Okay.  Good.  As long as you're

23  handling that.

24          MR. FRANKEL:  We're in discussions of that already,

25  and I think we're largely in agreement as to how we're going to

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*     12

1  be able to pull that together.

2          MR. FEMAN:  We don't see any issues on the format

3  production.

4          THE COURT:  Okay, good.  All right.  Back to the

5  Plaintiff.  Anything else you want to identify right now?

6          MR. FEMAN:  One thing I might add is that we'd like in

7  Phase I for the Defendant to identify all DBAs through which

8  it's selling Canon products.  We've identified several DBAs in

9  the complaint, but we're not sure what else is out there.  And

10  in Defendant's answer, they've said that they do business online

11  through various affiliated entities and DBAs.

12          THE COURT:  So, you would want any DBA that is also

13  selling Canon products that you have not so far named?

14          MR. FEMAN:  Correct.  And we'd ask that the sales

15  figures for the Canon models and revenue that we previously

16  discussed, we'd ask that that be listed for all the DBAs as

17  well.

18          THE COURT:  Okay.  I think identification of the DBAs

19  is something that the Defendants should do at this point just to

20  make sure that they have the right people.

21          MR. FRANKEL:  I'm sorry.  That's as part of Phase I?

22  Or in the initial disclosures?

23          THE COURT:  Of Phase I.

24          MR. FEMAN:  And that's it from Plaintiff's perspective

25  for Phase I.

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*    13

1            THE COURT:  Okay.  Is that it?

2            MR. FRANKEL:  Again, I'm not sure whether this goes to

3    Phase I or Phase II, Your Honor, but --

4            THE COURT:  We're only talking about Phase I.

5            MR. FRANKEL:  No, I understand.  There's discovery

6    that we'd want, and I'm not positive which one it falls into.

7            THE COURT:  Okay.  Go ahead.

8            MR. FRANKEL:  But certainly parts of our defense is

9    our waiver and estoppel and acquiesce by the Plaintiffs.  And

10   from our understanding, Canon has known about this for years.

11   They know that gray markets are sold in the United States.  They

12   know actually that some of their own authorized resellers are

13   selling gray market goods in the United States.  And they don't,

14   as far as we know, take action to stop that.  For some reason

15   they're singling us out now years after knowing about this and

16   now they're racketing up damages purportedly and suing us at

17   this point.  So we believe that that's a very strong here, and

18   we want discovery from the Plaintiffs themselves and from these

19   authorized resellers that they're acquiescing to and agreeing to

20   have selling that way.  As well as -- and this will, I'm sure,

21   be a Phase II point, so may I should hold off.

22           THE COURT:  No, finish discussing it.

23           MR. FRANKEL:  Go on with it?  How this may impact on

24   foreign discovery as well, because Canon U.S.A., as they allege

25   in their complaint, is really just the U.S. licensee of Canon

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*      14

1   products from Canon, Inc., which is a Japanese company.  So

2   Canon, Inc. is actually the manufacturer here.  And so if Canon,

3   Inc. is acquiescing or agreeing, or knows about this also, and

4   they're selling it to foreign distributors with the knowledge

5   that the foreign distributors are going to be selling the goods

6   to the United States through venues such as my client, then

7   that's also a defense.  So we would want potentially to be able

8   to get discovery from them as well for those kinds of defenses.

9            THE COURT:  I think you'd be entitled, at least in

10  Phase I, to find out how long they've known about your clients.

11  So you know documents showing how long the Plaintiff has known

12  that these people have been selling Canon goods.  I'm not going

13  to ask you to look at everything, all sales from everybody else,

14  but your knowledge as to these Defendants.

15           MR. FEMAN:  Do you mean all Canon goods?  Or all Canon

16  goods where we have evidence that they are materially different

17  from genuine Canon goods?

18           THE COURT:  Well, certainly all Canon goods forming

19  the basis of this complaint.  So cameras.

20           MR. FEMAN:  Okay.  And if I may respond briefly to his

21  point about foreign discovery?

22           THE COURT:  Yes.

23           MR. FEMAN:  I think part of the reason there is a

24  discrepancy between the dates and Plaintiff's proposal and

25  Defendant's proposal, we've agreed to disagree in our conference

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*      15

1    calls prior to today about the scope of discovery.  But from the

2    Plaintiff's perspective, we don't see the need for any foreign

3    discovery, or really any third party discovery unless unforeseen

4    issues arise later in the case.  From our perspective, this case

5    is about whether the products that the Defendants are selling

6    are materially different from those that are genuinely sold in

7    the United States.

8             THE COURT:  I think that is the critical issue, right?

9    That's the critical issue on your trademark question.

10            MR. FEMAN:  Correct.  So to the extent that they might

11   want discovery from anyone in another country or Canon, Inc., we

12   don't think that's relevant.

13            THE COURT:  I think you can hold off on that

14   certainly.  Right?  And kind of focus on the products at issue

15   here.

16            MR. FRANKEL:  I certainly agree, Your Honor.  For

17   Phase I that makes sense.  But for Phase II, again we're talking

18   about our defenses here.  I understand that the Plaintiff would

19   rather not focus on it, but for our defenses of acquiesces and

20   estoppel, etcetera; the knowledge of Canon, not just Canon

21   U.S.A., but Canon, Inc., who's the actual manufacturer here,

22   it's certainly relevant.  And again, that may take more time

23   than just focusing on what they would obviously like to focus

24   on, which are their claims.

25            MR. FEMAN:  And from Plaintiff's perspective, Canon,

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*      16

1   Inc. is a Japanese company.  While Canon U.S.A. is a U.S.

2   subsidiary.  They're separate companies.  Canon U.S.A. doesn't

3   have possession, custody or control over Canon, Inc. documents.

4   I think it's pretty well established under corporate law in the

5   U.S. that these are separate entities, and you can't treat them

6   as one in the same.  So to somehow attribute some sort of

7   knowledge that Canon, Inc. may have to Canon U.S.A., we think

8   would be inappropriate and wouldn't warrant any discovery.

9          THE COURT:  All right.  Why don't we do this.  Why

10  don't you wait until Canon, the Plaintiff's deposition is taken,

11  because that will give the Defendant a little bit more time to

12  flush out the issues of the corporations and how they're

13  related, and whether or not Canon in Japan has information and

14  should be deposed, or should give information, or should

15  participate in discovery of the action.

16         MR. FEMAN:  Okay.  Just to note for the record, Canon

17  Inc. doesn't have a presence in the U.S.  So to take Canon,

18  Inc.'s deposition would require --

19         THE COURT:  No, I'm talking about taken the

20  Plaintiff's deposition.

21         MR. FEMAN:  Correct.  Ultimately though I thought you

22  mentioned.

23         THE COURT:  No, ultimately, but, that's down the road.

24         MR. FEMAN:  Sure.

25         THE COURT:  Okay.

*Canon U.S.A. Inc. v. F & E Trading LLC et al* - 2/25/16      17

1            MR. FRANKEL:  Right.  But again, Your Honor, that's

2    why we were requesting more time, so we're not squeezed into a

3    situation where --

4            THE COURT:  No, that's okay.  If that comes up, you'll

5    have more time later.  I'm just trying to get the ball rolling

6    here.

7            MR. FRANKEL:  Okay.  No, that's fine.  Again, that's

8    why we were thinking of dates somewhat further out than Your

9    Honor was proposing.

10           THE COURT:  Let's do this.  Okay?  What I'm going to

11   do is, is I'm going to enter the dates on Plaintiff's proposal.

12   I'm certainly open to extending that if this is much bigger than

13   we see.  But what I'd like to do is go by this schedule now; see

14   where the case goes; and if you need more time, certainly you

15   can ask for it.  All right?

16           MR. FRANKEL:  Okay.

17           THE COURT:  But let's take the depositions you know of

18   the people who are here; get the documents here; and see where

19   the case goes from there.

20           MR. FRANKEL:  Okay.

21           THE COURT:  Okay?  I am not going to put down a status

22   conference right now because there may actually be new parties

23   in this case once the Defendant identifies if there are any

24   other DBAs.  You might be adding people.  I'm not going to put

25   down a conference right now.  I'd like you to go by this

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*     18

1   schedule.  And I'm going to give you -- let's see.  What I'd

2   like to do, is I'd like to see you in June, okay?  Because at

3   that point, you'll have the new parties, you'll have your

4   initial request in, in any case, for production of documents and

5   interrogatories.  Because that's May.  You'll have responded to

6   those.  And then we can talk about depositions, but you're free

7   to take before June.  You know, if you're ready for that, go for

8   it.  But otherwise, what I'd like to do to keep my hands on it

9   is schedule you to come in let's say the second week in June.

10  Let's take a look at our calendars.

11              (Pause.)

12              THE COURT:  How does June 13 look for you?

13              MR. FEMAN:  I'm just turning on my calendar briefly.

14              THE COURT:  Okay.

15              MR. FRANKEL:  Your Honor, that's a Jewish holiday of

16  Shavuot.

17              THE COURT:  The 15th?

18              MR. FRANKEL:  The 15th if okay for me.

19              THE COURT:  Does that work?

20              MR. FEMAN:  That should work for Plaintiff.

21              THE COURT:  Okay.  So let's do this.  Let's put you

22  down.  I'm going to so-order the Plaintiff's proposal for

23  discovery at this point; put you down for a conference on June

24  15 at 10:30; and what I would like you to do is on June 10,

25  which is the Friday before, send me a joint status letter

*Canon U.S.A. Inc. v. F & E Trading LLC et al - 2/25/16*     19

1  letting me know exactly what you've done so far in the case;

2  where you see discovery going; and what you need.

3          MR. FEMAN:  Okay.

4          THE COURT:  All right?  So, we'll together until then.

5  Anything else you need from me today?

6          MR. FEMAN:  Not at this time.

7          THE COURT:  Defendants?

8          MR. FRANKEL:  I guess not at this time, Your Honor.

9          THE COURT:  Okay.  All right, thanks.  I'll see you in

10  June.

11          MR. FEMAN:  Thank you, Your Honor.

12                         - o0o -

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           CERTIFICATION

2

3          I, Rochelle V. Grant, certify that the foregoing is a

4    correct transcript from the official electronic sound recording

5    of the proceedings in the above-entitled matter.

6

7    Dated:   March 10, 2016

8

9    _____
                                        Rochelle V. Grant
10

11                                      AA Express Transcripts
                                           (888) 456-9716
12

13

14

15

16

17

18

19

20

21

22

23

24

25