UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

CANON U.S.A., INC.,

                    Plaintiff,

    - against -

F & E TRADING LLC, a New York Limited
Liability Company; F & E TRADING LLC, a
New Jersey Limited Liability Company; BIG
VALUE PLUS LLC d/b/a BIG VALUE INC.;
ANOTHER DEAL SITE LLC; PLATINUM
CAPITAL GROWTH LLC d/b/a
ELECTRONICS VALLEY; ELECTRONICS
BASKET LLC; ELITE IT GROUP LLC d/b/a
DAVISMAX, NETSALES, WEB OFFERS, and
BRAND SPECIALS; 6TH AVENUE EXPRESS
LLC d/b/a GADGET CIRCUIT; and ALBERT
HOULLOU,

                    Defendants.

_____

**MEMORANDUM AND ORDER**
2:15-cv-6015 (DRH)(AYS)

**APPEARANCES**

**DORSEY & WHITNEY LLP**
Attorneys for Plaintiffs
51 West 52nd Street
New York, NY 10019-6119
By:    Richard H. Silberberg, Esq.
        Bruce R.M. Ewing, Esq.
        Dai Wai Chin Feman, Esq.
        Jonathan Richard Montcalm, Esq.

**GOLDBERG & RIMBERG PLLC**
Attorneys for Defendants
115 Broadway Suite 302
New York, NY 10006
By:    Efrem Tobias Schwalb, Esq.
        Robert L. Rimberg, Esq.
        Steven Eric Frankel, Esq.

**HURLEY, Senior District Judge:**

## I. INTRODUCTION

By notice of motion filed on October 14, 2016, defendants Another Deal Site LLC, Electronics Basket LLC, and Elite IT Group LLC's ("Moving Defendants") move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against them in the two-count Second Amended Complaint ("SAC"). The SAC was filed against them, other corporate defendants (F & E Trading LLC, Big Value Plus LLC, Platinum Capital Growth LLC, and 6th Avenue Express LLC, collectively the "Answering Defendants,"), and individual defendant Albert Houllou ("Houllou") (collectively the "Defendants") by Plaintiff Canon U.S.A., Inc. ("Canon-USA"). The SAC alleges trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), as well as common law unfair competition. Canon-USA opposes the Moving Defendants' Motion to Dismiss.

By notice of motions filed on October 14, 2016 and February 22, 2017, Cannon-USA also moves to strike or dismiss pursuant to Rule 12(f) and 12(b)(6), Answering Defendants' and Houllou's counterclaims ("Counterclaims") each of which seeks a declaratory judgment that certain "disclaimers preclude liability under Section 43(a)(1)(A) of the Lanham Act or Common Law Unfair Competition[.]" (Counterclaim at ¶ 46.)

For the reasons that follow, Moving Defendants' Motion to Dismiss is denied, and Cannon-USA's Motion to Strike or Dismiss is also denied.

## II. BACKGROUND

Canon-USA alleges that Defendants have violated the Lanham Act as well as common law unfair competition for selling "Gray Market Cameras," which are CANON photographic

products that were either intended by CANON for use and resale in Asia or Europe or are otherwise materially different from Genuine CANON Cameras sold in the United States.

*A. Factual Background*

1. Canon-USA's Claims

The following facts are taken from the SAC and deemed to be true for purposes of the present motion.

Canon-USA is the exclusive licensee of the CANON trademark ("CANON Mark") from its parent, Canon Inc. (SAC at ¶ 31.) The CANON Mark has come to be associated with high quality products, including, *inter alia*, printing, photographic and imaging equipment, and related goods. (*Id.* at ¶ 2.) Among other business, Canon-USA imports, markets, distributes, and sells CANON-brand cameras and photographic products for use and resale in the United States (hereafter, "Genuine CANON Cameras"). (*Id.* at ¶ 33.) As with other Canon-brand products sold under the CANON Mark, Canon-USA extensively advertises Genuine CANON Cameras using multiple avenues to reach consumers, *to wit*: the Internet, television, printed media, trade shows, and other promotional means. (*See id.* at ¶ 34.) Over time, the CANON Mark has acquired substantial goodwill among consumers, which is very valuable to Canon-USA. (*Id.* ¶ 38.) To maintain and ensure its continued goodwill, Canon-USA: (1) sells its exclusively licensed Genuine CANON Cameras directly to authorized retailers; and (2) monitors markets, investigating the distribution and sale of non-genuine goods at unauthorized retail locations, which may raise consumer safety concerns, threaten Canon-USA's long-established goodwill, and violate Canon-USA's trademark rights. (*Id.* at ¶ 39.)

Genuine CANON Cameras are manufactured for sale and use in the United States. They: (1) carry unique serial numbers, appearing as barcodes on both the cameras themselves and their

accompanying packaging, and which are utilized for quality-control purposes; (2) are covered by robust, enforceable Canon-USA warranties; (3) are sold in packaging which provides accurate, specific descriptions of the products contained therein; (4) are accompanied by genuine, original operating manuals; and (5) are equipped with CANON-brand power supplies and accessories, which are engineered to comply with U.S. safety regulations, governmental requirements and certifications. (*Id.* ¶¶ 44–51.)

Moving Defendants together with Answering Defendants are wholesalers and retailers of consumer electronics, including cameras. (*Id.* at ¶ 8–15.) None are authorized retailers, dealers, or resellers of Genuine CANON Cameras. (*Id.* at ¶ 52.) Houllou is "a principal of each of the Corporate Defendants," and is listed as a principal by the State of New Jersey for most of the Answering Defendants (6th Avenue Express LLC, Big Value Inc., F&E Trading LLC, and Platinum Capital Growth LLC) as well as two of the three Moving Defendants (Another Deal Site LLC and Electronics Basket LLC). (*Id.* at ¶ 20.)

The Defendants conduct business primarily on the Internet through various domain names and on Internet marketplaces. (*See id.* at ¶ 17.) Within the past five years, part of the Defendants' marketing, selling, and distribution of photographic products included products bearing the CANON Mark. (*Id.* at ¶ 25.) At least some of these CANON photographic products were either intended for use and resale in Asia or Europe or are otherwise materially different from Genuine CANON Cameras sold in the United States (hereafter, "Gray Market Cameras"). (*Id.*)

Canon-USA alleges that the material differences in the Gray Market Cameras advertised on the Defendants' websites and sold by them are that those cameras: (a) either lack or carry marred serial numbers (both on the cameras and the packaging); (b) either lack warranty

coverage or carry significantly inferior warranties (*e.g.*, with stricter compliance requirements and for shorter durations); (c) arrive in incorrect packaging; (d) are accompanied by inferior photocopied manuals; and (e) come with power supplies and accessories which are not CANON-manufactured, resulting in the same not being guaranteed for safety and quality. (*Id.* at ¶ 4.) Canon-USA claims that Defendants' sales of and related actions regarding the Gray Market Cameras deprive Canon-USA of the opportunity to earn profits from the sale of Genuine CANON Cameras to consumers. (*See* SAC at ¶ 56.)

> 2. Answering Defendants' and Houllou's Counterclaim

Defendants include a disclaimer on their website, as well as attached directly to the boxes of CANON cameras that are sold to customers in the United States. (Answering Def.'s Counterclaim at ¶¶ 28, 29.) The website disclaimer provides that Defendants carry "both USA as well as imported products[,]" and that imported products may be different and may not be eligible for a manufacturer warranty in the United States. (*Id.* at ¶ 28.) Additionally, the disclaimer attached directly to the CANON cameras provides that:

> In accepting this product, you acknowledge and agree that: (1) this may be an imported product not originally intended for sale in the USA; (2) seller is not an authorized dealer of the manufacturer; (3) if it is an international version of the product, it may differ from USA versions in its packaging, charger, AC adapters, printed manual, and manufacturer warranty; (4) if you purchased a "body only" offer, other parts such as the lens may have been removed from this box; (5) if you purchased a lens only, it is a new lens, but if it arrived in a white/plain box, it is not original manufacturer packaging; (6) if needed, a third party AC adapter and/or battery charger is included with the product; (7) the product may or may not include the original manual, but an English manual may be found on the internet; (8) Import items may not be eligible for manufacturer warranty. In accepting this product, you agree that if you resell this product in the USA, you will advertise at the point of sale a notice containing the information set forth above.

(*Id.* at ¶ 33.)

*B. Procedural Background*

On October 20, 2015, Canon-USA commenced this action alleging trademark infringement and unfair competition. The Defendants sought permission to file a motion to dismiss, but, on December 4, 2015, Canon-USA filed the First Amended Complaint, which named additional Defendants and added factual allegations. On March 7, 2016, individual defendant Houllou moved to dismiss.

On May 31, 2016, after court-ordered initial discovery that led to the subsequent disclosure of affiliated entities, and a so-ordered stipulation between Canon-USA and the defendants listed in the First Amended Complaint, Canon-USA filed the SAC naming the disclosed affiliate entities as actual defendants, not as "d/b/a's". Pursuant to the stipulation, both Houllou's motion to dismiss and Canon-USA's opposition thereto (which had been fully briefed and were *sub judice*) were deemed applicable to the SAC. To avoid confusion regarding citations to the Complaint, the Court directed the filing of corrected briefs (*see* Electronic Order dated June 2, 2016), which were filed on June 14, 2016. The Court ultimately denied Hollou's motion to dismiss on the basis that Canon-USA's allegations sufficiently stated plausible claims against Houllou for trademark infringement and unfair competition at the pleading stage. *Canon U.S.A., Inc. v. F&E Trading LLC*, 2017 WL 112515 (E.D.N.Y. 2017).

On September 23, 2016, Moving Defendants made the present motion to dismiss the SAC for failure to state a claim against Moving Defendants. (Moving Def.'s Mem. in Support of Motion to Dismiss at 4.) Specifically, Moving Defendants argue that Canon-USA's allegations are conclusory and therefore insufficient as a matter of law. (*Id.* at 6.) Moreover, Moving Defendants claim that Canon-USA's use of group pleadings is improper and insufficient because

of a lack of any specific factual allegations against Moving Defendants. (*Id.* at 8–9.) Canon-USA opposed the Motion to Dismiss, stating that (i) the SAC states valid claims that are non-conclusory; and (ii) the group pleading provides fair notice for Moving Defendants because all of the Defendants are an identically situated group of affiliated companies and with a common principal. (Plaintiff's Mem. in Opposition at 5–10.)

On October 14, 2016, Plaintiff moved to strike or dismiss the declaratory judgment counterclaim ("Answering Def.'s Counterclaim") asserted by Answering Defendants as "duplicative, redundant, and [serving] no purpose." (Plaintiff's Mem. in Support at 2.) In the alternative, Canon-USA posits that the Court should decline to exercise jurisdiction over the Answering Defendants' Counterclaim. (*Id.* at 6.) Answering Defendants opposed the motion, asserting that their Counterclaim is not redundant because it is necessary to ensure that the full dispute between the parties is resolved in this litigation. (Answering Def.'s Mem. in Opp. at 7.) Additionally, Answering Defendants state that the Court should not strike their Counterclaim because it seeks a judicial determination that is relevant to claims Canon-USA has threatened to bring and has in fact brought in this action. (*Id.* at 8.)

On January 25, 2017, Houllou answered the SAC asserting the same counterclaim ("Houllou's Counterclaim") as Answering Defendants. (Houllou Counterclaim at ¶ 1.) On February 22, 2017, Canon-USA moved to strike or dismiss Houllou's Counterclaim by re-filing the same memoranda of support as well as Answering Defendants' opposing papers that were filed for the Answering Defendants' Counterclaim. For this reason, we will consider the two Counterclaims and the attendant Motions to Strike or Dismiss simultaneously.

### III. MOVING DEFENDANTS' MOTION TO DISMISS

*A. Legal Standard for Rule 12(b)(6) Motion to Dismiss*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).

The plausibility standard is guided by two principles. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009). First, the principle that a court must accept all allegations as true does not apply to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Therefore, a plaintiff must provide facts which are sufficient to allow each named defendant to have a fair understanding what it is the plaintiff is complaining about and as to whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' "

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007).  Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

Further, "[i]n making its Rule 12(b)(6) determinations, the court 'may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit.' " *Live Face on Web, LLC v. Five Boro Mold Specialist Inc., et al.*, No. 15-cv-4779 (LTS)(SN), 2016 WL 1717218, at *2 (S.D.N.Y. Apr. 28, 2016) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

### B.  Discussion

The Court will first consider and address the separately made argument that Canon-USA's allegations in the SAC are insufficient as a matter of law.  The Court will then consider the separate argument that the SAC violates Rule 8's pleading requirements by impermissibly employing group pleading.

1. Regarding the First Cause of Action: Conclusory Allegations and the Trademark Infringement and Unfair Competition Claim under the Lanham Act

In their Motion to Dismiss, Moving Defendants claim that Canon-USA's allegations in the SAC are conclusory and therefore insufficient as a matter of law.  Under *Twombly,* to survive a motion to dismiss a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." 127 S.Ct. at 1974.  The Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief

above the speculative level, on the assumption that all the allegations in the
complaint are true (even if doubtful in fact).

*Id.* at 1964–65 (citations and internal quotation marks omitted).  The Second Circuit has found

that *Twombly* does not require a universally heightened standard of fact pleading, but "instead

requir[es] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some

factual allegations in those contexts where such amplification is needed to render the claim

*plausible." Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007).  In other words, *Twombly*

"'require[s] enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to

plausible.'"  *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 127

S.Ct. at 1974)

To successfully allege a trademark infringement claim, a plaintiff must establish that "(1)

it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant

used the mark, (3) in commerce, (4) 'in connection with the sale ... or advertising of goods or

services,' (5) without the plaintiff's consent." *1–800 Contacts, Inc. v. WhenU.Com, Inc.*, 414

F.3d 400, 406 (2d Cir.2005), *cert denied,* 546 U.S. 1033 (2005) (quoting 15 U.S.C. §

1114(1)(a)).  Additionally, "the plaintiff must show that defendant's use of that mark 'is likely to

cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff],

or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial

activities by [plaintiff].'"  *1–800 Contacts*, 414 F.3d at 406 (quoting 15 U.S.C. § 1125(a)(1)(A));

*see also Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508–09 (2d Cir. 1997); *Gruner +

Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072 (2d Cir. 1993).  This effectively establishes a

two prong test in which the first prong has five elements.  *See id.*

Here, Moving Defendants do not contest that Canon-USA has a valid mark or that

Canon-USA did not give Moving Defendants permission to use the CANON Mark, therefore

elements 1 and 5 of the first prong of the Lanham Act test are not in dispute. However, Moving Defendants seem to challenge whether Canon-USA has made sufficient allegations as to the remaining three elements; namely whether Moving Defendants used the CANON Mark in commerce in connection with the sale or advertising of goods. (*See* Moving Def.'s Mem. in Support at 2–3.)

Here, Canon-USA has defined the term "Corporate Defendants" in the SAC to include all Answering Defendants and Moving Defendants. (SAC at 2.) The SAC then goes on to make numerous factual allegations against the Corporate Defendants—including Moving Defendants—that they have used the CANON Mark, in commerce, in connection with the sale or advertising of goods or services. For example, SAC ¶ 62 states:

> After importing Asian and European Gray Market Cameras, the Corporate Defendants (at Houllou's direction) are marketing, distributing and selling the Gray Market Cameras to U.S. Customers as Genuine CANON Cameras through Internet advertising, the Websites, and the Marketplaces under the identifies of the Corporate Defendants and the DBAs.

(SAC at ¶ 62.) This sufficiently alleges all of the remaining elements of the first prong of the Lanham Act test. There are additional allegations against all "Defendants,"[1] including that "Defendants have knowingly and in bad faith marketed, distributed, offered for sale and/or sold in the United States materially different products[.]" (*Id.* at ¶ 52.) These factual allegations are sufficient under *Twombly* "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." 127 S.Ct. at 1974. Therefore, Canon-USA has met the threshold for the first prong of the Lanham Act test. The question of whether these

---

[1] "Defendants" is defined in the SAC to include the Corporate Defendants and individual defendant Houllou. (SAC at 2.)

allegations are permissibly pled with sufficient specificity against Moving Defendants is addressed in further detail in the following section regarding group pleading.

The second prong of the Lanham Act test requires a showing that Moving Defendants' use of the mark is likely to cause confusion. The Second Circuit set out a test for determining the likelihood of confusion as a factual matter in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961). Numerous district courts have stressed that "[t]he likelihood of confusion test is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." *FragranceNet.com, Inc. v. FragranceX.com, Inc.*, 493 F.Supp.2d 545, 551 n.8 (E.D.N.Y. 2007) (quoting *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.* 425 F.Supp.2d 402, 412 (S.D.N.Y. 2006)); *see also Eliya, Inc. v. Kohl's Dep't Stores*, No. 06-CV-195 (GEL), 2006 WL 2645196, at *3–4 (S.D.N.Y. Sept. 13, 2006) ("an application of the so-called *Polaroid* factors on [a] motion to dismiss would be inappropriate because it would involve premature factfinding."); *Hearts on Fire Co., LLC v. L C Int'l Corp.,* No. 04–CV–2536 (LTS), 2004 WL 1724932, at *4 (S.D.N.Y. July 30, 2004) ("proof of a likelihood of confusion requires an analysis of the *Polaroid* factors, resolution of which would constitute premature fact finding inappropriate upon a motion to dismiss.").

As the Second Circuit has previously held, "[t]he task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Merck & Co.*, 425 F.Supp.2d at 412 (quoting *Cooper v. Parksy*, 140 F.3d 433, 440 (2d Cir. 1998)). Thus, on this Motion to Dismiss, the Court need only consider whether Canon-USA has sufficiently pled a likelihood of confusion.

Here, Canon-USA has clearly alleged a likelihood of confusion and the Court must accept such allegations as true for purposes of a motion to dismiss. (*See, e.g.*, SAC at ¶ 53 ("Defendants'[2] bad faith and intentional marketing, distribution, and sale of Gray Market Cameras prominently featuring the CANON Mark, but containing material differences . . . are intended to, and are likely to, cause confusion"); SAC at ¶ 59 ("Defendants' conduct has also resulted in customer confusion, as consumers who purchase the Gray Market Cameras believe they are Genuine CANON Cameras when that is not the case"); SAC at ¶ 70 ("These material differences in warranty coverage damage the goodwill inherent in [Canon-USA's] well-regarded CANON brand and cause consumers to believe, wrongly, that it is CUSA providing such nonexistent or inferior warranty coverage"); etc.) Since Canon-USA has unequivocally alleged the existence of a likelihood of confusion, they have met the threshold for the second prong of the Lanham Act Test.

Therefore, Moving Defendants' Motion to Dismiss the first cause of action for trademark infringement and unfair competition under the Lanham Act on the basis that these claims are insufficient as a matter of law is denied.

2. Regarding the Second Cause of Action: Group Pleading and the Trademark Infringement and Unfair Competition Claim under the Lanham Act

Moving Defendants also allege that Canon-USA impermissibly employs group pleading in the SAC in violation of the requirements of Rule 8(a). Canon-USA acknowledges that the SAC employs group pleading, referring to all of the Defendants as Defendants or Corporate Defendants. (*See, e.g.*, SAC at ¶¶ 61–66, 68, 72 ("*Corporate Defendants* (at the direction of defendant Houllou) are importing Gray Market Cameras[;]" "the *Corporate Defendants* (at

---

[2] Defined to include Moving Defendants, *see* footnote 1 supra. (SAC at 2.)

Houllou's direction) are marketing, distributing and selling the Gray Market Cameras[;]" "*Many of Defendants'* Gray Market Cameras either lack serial numbers, contain defects, [etc.]") (emphasis added).)

It is well-established in this Circuit that plaintiffs cannot simply "lump" defendants together for pleading purposes. *Ritchie v. Northern Leasing Systems, Inc.*, 14 F.Supp.3d 229, 236 (S.D.N.Y. 2014). "Rule 8(a) is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it." *Holmes v. Allstate Corp.*, No. 11-CV-1543, 2012 WL 627238, at *22 (S.D.N.Y. Jan. 27, 2012) (citing *Pierson v. Orlando Regional Healthcare Systems, Inc.*, 619 F.Supp.2d 1260, 1273 (M.D.Fla. 2009) (dismissing complaint because group-pleading method of collectively referring to individual defendants and two physician groups as "Peer Review Defendants" throughout complaint did not satisfy the "fair notice" requirement of Rule 8.)).

However, "nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each." *Vantone Group Limited Liability Co. v. Yangpu NGT Industrial Co., LTD. et al.*, No. 13-CV-7639, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015). "'The key to Rule 8(a)'s requirements is whether adequate notice is given,' and that 'fair notice' is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." *Ritchie*, 14 F.Supp.3d at 236–37 (citing *Hudak v. Berkeleye Grp., Inc.*, No. 13-Cv-89, 2014 WL 354676, at *4 (D.Conn. Jan. 23, 2014)).

Both parties cite numerous cases in support of their positions, and seek to distinguish the cases cited by the opposing party. One of the cases that Moving Defendants cite in which group pleading was held to be improper relates to constitutional deprivations under § 1983, which has a

heightened pleading standard and is not applicable.  *See Thomas v. Venditto*, 925 F.Supp. 2d 352, 363 (E.D.N.Y. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).  The thrust of all of the non-constitutional cases that both Canon-USA and Moving Defendants cite is that, to meet the notice-pleading requirements of 8(a), the complaint must either distinguish between the defendants or plead the allegations with sufficient specificity so that each individual defendant is on notice of the particular claims asserted against it and the grounds for such claims.  *See, e.g.*, *Aghaeepour v. N. Leasing Sys. Sys., Inc*., No. 14-CV-5449, 2015 WL 7758894, at *4 (S.D.N.Y. Dec. 1, 2015) (allowing group pleading because "the Complaint in the instant case contains numerous allegations pleaded with specificity as to particular defendants"); *Vantone Group*, 2015 WL 4040882, at *4 (while plaintiff referred to all 24 defendants collectively in ten of the eleven claims asserted in the complaint, the complaint did "make factual allegations that distinguish between the conduct of the Moving Defendants, listing specific actions taken by each of them.")

Here, Canon-USA has met the standard notice requirements of Rule 8(a).  In the SAC, Canon-USA defines the term "Corporate Defendants" to include both the Moving and Answering Defendants.  (SAC at 2.)  The SAC also defines the term "Defendants" to include Corporate Defendants and individual defendant Houllou.  (*Id.*)  The SAC then goes on to make allegations separately against Corporate Defendants, Defendants, and individual defendant Houllou.  (*See, e.g.*, SAC at ¶ 54 ("Defendants' unauthorized use of the CANON Mark falsely communicates to consumers that Defendants are authorized resellers of Genuine CANON Cameras"); SAC at ¶ 61 ("Corporate Defendants (at the direction of Houllou) are importing Gray Market Cameras bearing the Canon Mark from Asia and Europe"); etc.).  It is very clear that where the SAC includes an allegation against "Corporate Defendants," that allegation is made

identically against each of the Corporate Defendants, and that where the SAC includes an allegation against "Defendants," that allegation is made identically against each of the Corporate Defendants and Houllou.

Given that, (1) Canon-USA has defined the term Defendants and Corporate Defendants; (2) Moving Defendants and Answering Defendants are alleged to be similarly situated companies; (3) Moving Defendants and Answering Defendants share a common principal (Houllou); and (4) identical allegations are pled against all Defendants, Canon-USA has plead the allegations with sufficient specificity that each individual defendant is on notice of the particular claims asserted against it and the grounds for such claims. Thus, the SAC provides adequate notice to meet the notice pleading requirements of Rule 8(a), even though it contains allegations against Defendants and Corporate Defendants collectively. *See, e.g.*, *Ritchie*, 14 F.Supp.3d at 237.

Therefore, Moving Defendants' Motion to Dismiss the first cause of action is denied.

3. Regarding the Second Cause of Action: Common Law Unfair Competition

"It is well-established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims." *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp.2d 448, 456 (S.D.N.Y. 2005). *See also Elastic Wonder, Inc. v. Posey*, No. 13-cv-5603 (JGK), 2015 WL 273691, at *5 n.5 (S.D.N.Y. Jan. 22, 2015) (quoting *Lorillard Tobacco*); *Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp.2d 283, 298-99 (S.D.N.Y. 2010) (state law statutory and common law unfair competition claims "stand or fall with the federal unfair competition claim"); *Info. Superhighway, Inc., v. Talk Am., Inc.*, 395 F. Supp.2d 44, 56 (S.D.N.Y. 2005) ("The elements necessary to prevail on common law causes of action for trademark infringement and unfair

competition mirror Lanham Act claims.") (citing *TCPIP Holding Co. v. Haar Commc'ns*, No. 99-cv-1825 (RCC), 2004 WL 1620950, at *6 (S.D.N.Y. July 19, 2004); further citations omitted).

Thus, since the Court finds Canon-USA has plead sufficient facts to state a plausible claim against Moving Defendants for trademark infringement and unfair competition under the Lanham Act (its first cause of action), it follows that Canon-USA's common law unfair competition claim (its second cause of action) is also sufficiently pled. The same logic applies to the Court's determination that Canon-USA has permissibly employed group pleading. Therefore, the Motion to Dismiss the unfair competition claims against Moving Defendants is also denied.

## IV. CANON-USA'S MOTIONS TO STRIKE OR DISMISS THE COUNTERCLAIM

### A. *Answering Defendants' and Houllou's Counterclaims*

Answering Defendants and Houllou separately asserted the same counterclaim seeking declaratory judgment that the disclaimers provided on its website and attached to CANON cameras:

> [A]re sufficient to prevent any customer confusion as to: (a) the lack of affiliation between CUSA and the Counterclaim Plaintiffs and (b) that the Canon Cameras sold by Counterclaim Plaintiffs may be Import versions which may contain differences from the U.S. version which may contain differences from the U.S. versions of the products; and that as a result the disclaimers preclude liability under Section 43(a)(1)(A) of the Lanham Act or Common Law Unfair Competition as alleged in the Complaint.

(Answering Def.'s Counterclaim at ¶ 46); (Houllou's Counterclaim at ¶ 48). Answering Defendants and Houllou also claim in their opposing papers that the SAC alleges a threat of litigation when it states that "it is possible if not likely, that further violations . . . will come to light as this litigation progresses. Thus, Defendants' wrongdoing as described herein should not

be viewed as an exhaustive recitation of all of Defendants' ongoing violations of [Plaintiff's] rights." (Answering Def.'s Mem. in Opp. at 6 (quoting SAC at ¶ 6).)

Canon-USA has moved to strike or dismiss the Counterclaims on the grounds that they do nothing more than mirror Canon-USA's claims and are duplicative, redundant, and would serve no purpose. (Plaintiff's Mem. in Support at 2.) In the alternative, Canon-USA asks the Court to decline exercise jurisdiction over the Counterclaims. Canon-USA also argues that the standard for a default judgment is not met because there is no future threat of litigation. (*Id.* at 5.)

### B. Canon-USA's Motion to Strike

#### 1. Rule 12(f) Motion to Strike Standard

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading . . . any redundant . . .matter." It is well-settled in the Second Circuit, that a motion to strike will be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). To prevail, the movant must demonstrate that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *In re Fannie Mae 2008 Securities Litigation*, 891 F.Supp.2d 458, 471 (S.D.N.Y. 2012) (citing *S.E.C. v. Lee*, 720 F.Supp.2d 305, 340–44 (S.D.N.Y. 2010) (quoting *Roe v. City of New York*, 151 F.Supp.2d 495, 510 (S.D.N.Y. 2001))). Motions to strike are generally disfavored. *Roe*, 151 F.Supp.2d at 510 (citing *Lipsky*, 551 F.2d at 893).

#### 2. Discussion

Canon-USA does not dispute elements 1 and 2 above, nor does it argue that permitting the Counterclaims to stand would prejudice it. Its failure to meet these burdens is fatal. *See In*

*re Fannie Mae*, 891 F.Supp.2d at 340–44.  Moreover, all of the precedent that Canon-USA cites

for the supposed "other" motion to strike standard for counterclaim cases, do not in fact support

Canon-USA's position.[3]

Accordingly, Canon-USA's motion to strike the Counterclaims is denied.

### C.  Motion to Dismiss

"A party has a right to seek a declaratory judgment where a reasonable apprehension

exists that if it continues an activity that it will be sued by another party." *800-Flowers, Inc. v.*

*Intercontinental Florist, Inc.*, 860 F.Supp. 128, 132 (S.D.N.Y. 1994); *see also Maryland Cas.*

*Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("Basically, the question in each case is

whether the facts alleged, under all the circumstances, show that there is a substantial

controversy, between parties having adverse legal interests, of sufficient immediacy and reality

to warrant the issuance of a declaratory judgment.").  Additionally, the Second Circuit has held

that "[i]n order to decide whether to entertain an action for declaratory judgment, we have

instructed district courts to ask: (1) whether the judgment will serve a useful purpose in

clarifying or settling the legal issues involved; and (2) whether judgment would finalize the

controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins.*

*Co.*, 411 F.3d 384, 289 (2d Cir. 2005).

---

[3] Rather, these are cases in which the courts dismissed counterclaims under Rule 12(b)(6), even though they cited or referred to Rule 12(f).  *See, e.g., Interscope Records v. Kimmel*, No. 07-CV-0108, 2007 WL 1756383, at *4 n.2 (N.D.N.Y. June 18, 2007) ("The case of *Capitol Records, Inc. v. Foster,* No. 04-1569 (W.D.Okla. Oct. 5, 2005) . . . involved a motion to strike pursuant to Rule 12(f).  The *Foster* court denied the motion on the ground that it was 'loath to grant a motion to strike for redundancy absent some showing of confusion or prejudice to the moving party.' *Id.* at 2.  Here, the Court is not striking the counterclaim pursuant to Rule 12(f), but dismissing it for [sic] pursuant to Rule 12(b)(6)[.]"); *Arista Records LLC v. Usenet.com, Inc.*, No. 07-CV-8822, 2008 WL 4974823, at *2–5 (S.D.N.Y. Nov. 24, 2008) (citing Rule 12(f) for the proposition that a court may strike redundant matters from a pleading, but then citing Rule 12(b)(6) and ultimately granting "Plaintiff's motion to dismiss [Defendant's] counterclaims" rather than a motion to strike).

There are two Second Circuit cases that are particularly instructive on the question of when a counterclaim for a declaratory judgment should withstand a motion to dismiss. In *Leach v. Ross Heater and Manufacturing Co.*, the plaintiff asserted a cause of action for patent infringement against the defendant for selling infringing products. 104 F.2d 88, 89 (2d Cir. 1939). The defendant counterclaimed seeking a declaratory judgment for invalidity of plaintiff's patents and non-infringement. *Id.* The district court dismissed the counterclaim, and the Court of Appeals reversed, primarily on the basis that if plaintiff voluntarily dismissed its suit, a case or controversy would remain regarding defendant's declaratory judgment counterclaim. *Id.* at 89–92. Given that the plaintiff had threatened defendant's customers with infringement actions, the Second Circuit noted that:

> The need for declaratory judgment is diminished, it is true, by the fact that the patentee has commenced this suit, but the need cannot be said to have wholly disappeared; the patentee may, for all that the defendant knows, withdraw his suit without prejudice and continue broadcasting assertions of infringement.

*Id.* at 91. In other words, the continued threat of litigation can provide a basis for a declaratory judgment counterclaim.

By contrast, in *Larson v. General Motors Corp.*, the Court of Appeals found that it was proper to dismiss defendant's counterclaim for a declaratory judgment. 134 F.2d 450 (2d Cir. 1943). In *Larson*, the district court retained jurisdiction over a counterclaim for a declaratory judgment after dismissing the plaintiff's infringement claim on the merits. *Id.* The Court of Appeals found that the judgment dismissing the action on the merits barred a future claim, and that "the plaintiffs had not threatened the defendant with suits against any future designs of cars which it might make[.]" *Id,* at 453–54. The Court of Appeals reversed because there was no controversy left. *Id. Leach* and *Larson* jointly stand for the proposition that "a counterclaim

seeking a declaratory judgment is not duplicative or redundant if it asserts an independent case or controversy which would remain viable after a dismissal of the plaintiff's claim." *Ferring B.V. v. Fera Pharmaceuticals, LLC*, 2014 WL 4829053, at \*6 (E.D.N.Y. 2014) (citing *Marvel Worldwide, Inc. v. Kirby*, 756 F.Supp.2d 461, 467 (S.D.N.Y. 2010) ("a counterclaim is not duplicative or redundant if it asserts an independent case or controversy that survives the dismissal of plaintiff's claim.")).

Here, the Court disagrees with Canon-USA that the Counterclaim is a mirror image of the claims in the SAC. A mirror image counterclaim is generally the exact opposite of the original claim with no added nuances. For example, in *Maverick Recording Co.*, the court found that a defendant's counterclaim was the mirror image when "[t]he central issue in these cases is whether defendants committed copyright infringement, and the defendants' counterclaim [sought] a declaratory judgment that they did not[.]" Nos. 07-CV-200, 07-CV-640, 2008 WL 3884350, at \*1 (E.D.N.Y. 2008); *see also Interscope Records*, 2007 WL 1756383, at \*4 (The court found that "Defendant's counterclaim is that he did not engage in the acts alleged in Plaintiff's Complaint or that the Complaint fails to state a claim upon which relief can be granted." The court dismissed the counterclaim because there was no continuing threat of litigation and no claims of ongoing infringement so if plaintiff's infringement claim were withdrawn there would be no continuing case or controversy.)

Here, Answering Defendants and Houllou have raised an independent controversy; whether the disclaimers are sufficient to prevent customer confusion.[4] Even if Canon-USA withdraws its claims of trademark infringement and unfair competition under the Lanham Act

---

[4] The question of whether the Counterclaims should be dismissed on the merits was not raised as one of the grounds to dismiss.

and common law unfair competition, the question of whether the disclaimers prevent customer confusion will still stand. Pursuant to the Court of Appeals' holding in *Leach*, the possibility that Canon-USA "for all the defendant knows, [could] withdraw his suit without prejudice and continue broadcasting assertions of infringement" means that the need for declaratory judgment cannot be said to have wholly disappeared. 104 F.2d at 91. Moreover, despite Canon-USA's contentions to the contrary, there does appear to be a continued threat of litigation for both Answering Defendants, Houllou, and their current or future associated entities as long as they continue to sell Gray Market cameras. Therefore, Canon-USA's motion to dismiss is denied.

### D. Exercising Jurisdiction

Canon-USA also requests that the Court, in the alternative, decline to exercise discretionary jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). It is well established that the Act "confers discretion on the courts [to issue a declaratory judgment] rather than an absolute right upon the litigant" to obtain such a determination. *The New York Times Co. v. Gonzales*, 459 F.3d 160, 165 (2d Cir. 2006) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). The Second Circuit has outlined five factors for courts to consider before entertaining a declaratory judgment action:

> (i) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) whether a judgment would finalize the controversy and offer relief from uncertainty; (iii) "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata;'" (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (v) whether there is a better or more effective remedy.

*New York Times Co.*, 459 F.3d at 167 (quoting *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359–60 (2d Cir. 2003).

Application of these factors warrants entertaining the declaratory judgment. A judgment here could serve a useful purpose in clarifying or settling the legal issue of whether there has been trademark infringement, and more specifically, whether the disclosures prevent confusion (as discussed supra). The second factor also appears to weigh in favor, because a judgment could finalize the controversy; if the disclaimers are sufficient then Canon-USA would have no ground for its claims. The third factor also weighs in favor, as the continued threat of litigation from Canon-USA suggests that the proposed remedy is not merely procedural fencing or a race to res judicata. The fourth factor is neutral in that there is no reason to believe that a declaratory judgment would increase friction between sovereign legal systems or encroach on the domain of a state or foreign court. The final factor may weigh against entertaining the declaratory judgment Counterclaims because the better or more effective remedy could be resolving the underlying litigation concerning whether Defendants have committed trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), as well as common law unfair competition. However, as stated above, under *Leach* the possibility that Canon-USA could still withdraw its suit without prejudice bring similar or the same claims in the future means that declaratory judgment may be an effective remedy. *See* 104 F.2d at 91. Thus, at this pleading stage, this last factor does not counterbalance the first three factors that weigh in favor of exercising jurisdiction over the declaratory judgment Counterclaims.

Furthermore, in both of the cases that Canon-USA cites as examples in which courts have declined to exercise jurisdiction over counterclaims, there were mirror counterclaims that could have been dismissed as such under Rule 12(b)(6). *See Interscope Records*, 2007 WL 1756383, at *5 (the Court declined to exercise jurisdiction over the first counterclaim "seeking a declaration of non-infringement"); *Amusement Industry Inc. v. Stern*, 639 F.Supp.2d 301, 310–11

(S.D.N.Y. 2010) (dismissing a claim for declaratory judgment that (a) no attorney-client relationship existed, (b) third-party defendant had no authority to act on defendant's behalf in transactions in question; and (c) defendant did not ratify any of the representations or conduct made on his behalf by third-party defendant).  As we have already discussed supra, the Counterclaims do not simply mirror Canon-USA's claims.

Therefore, the Court shall exercise its jurisdiction over the Counterclaims.

## V. CONCLUSION

For the foregoing reasons, Moving Defendants' Motion to Dismiss is denied and Plaintiff's Motion to Strike or Dismiss the Counterclaims is also denied.

**SO ORDERED.**

Dated: Central Islip, New York.
      September 29, 2017


                        _____/s/_____
                        Denis R. Hurley
                        Senior District Court Judge, E.D.N.Y.