UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CANON U.S.A., INC,

                            Plaintiff,                              **REPORT AND**
                                                                      **RECOMMENDATION**
       -against-                                                CV 15-6015 (JMA)(AYS)

F&E TRADING LLC, et al.,

                            Defendants.
-------------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

       This is a case commenced by Plaintiff to enforce its trademark rights in the name Canon (hereinafter "Canon" or the "Canon Mark"). See generally Second Amended Complaint ("SAC") appearing as Docket Entry ("DE") [36]. Defendants are various individuals and entities alleged to be engaged in the sale of certain of Plaintiff's Canon products that, while manufactured by Plaintiff, are not intended for sale in the United States. Defendants' marketing of such goods is alleged to violate Federal trademark and State unfair competition laws. See id.

       Before the Court, on referral from the Honorable Joan M. Azrack for Report and Recommendation, are the parties' pretrial motions in limine to exclude the trial testimony of their adversary's expert witnesses. See Motions filed at Docket Entries herein [133], [134], [135], [136], [137], [138] and order of referral dated November 2, 2022.[1]

---

[1]    The November 2, 2022 referral order of the District Court also refers to this Court a motion filed at docket entry 139. That motion is a motion to seal. Also on the docket is a motion appearing at docket entry 140, which is a motion to strike previously filed information contained on the pubic docket. The District Court terminated the motion filed at docket entry 140, noting that the motion appearing as docket entry 139 was sealed. Since the District Court appears to have already granted the request to seal appearing at Docket Entry 139, this Report and Recommendation makes no decision regarding the motion appearing at docket entry 139.

On June 5, 2023 the Court began <u>Daubert</u> hearings by hearing the testimony of two of the parties' proffered experts: John Lamb ("Lamb") who seeks to testify as a trial expert on behalf of Plaintiff and Robert Frank ("Frank") who seeks to testify as a trial expert on behalf of Defendants. The Court has yet to hear and consider the economic damages experts. However, for the reasons set forth below and in the interests of expediting this matter, the Court issues this opinion and respectfully recommends denying the motion to exclude the testimony of Lamb, and granting the motion to exclude the testimony of Frank.

BACKGROUND

I.  <u>The Amended Complaint</u>

  A.  <u>The Parties</u>

Plaintiff Canon USA ("Plaintiff" or "CUSA") is a supplier of, <u>inter alia</u>, photographic and imaging equipment, with a long history of selling high quality products that bear the Canon Mark. SAC ¶ 1. Plaintiff is the exclusive United States licensee of the Canon Mark, which is used in connection with the marketing of cameras, camera accessories and related goods. <u>Id.</u> ¶¶ 30-31. CUSA has imported, marketed and distributed Canon goods for decades. Sales of such goods are extensively advertised via, <u>inter alia</u>, various site on the internet. <u>Id.</u> ¶ 34. CUSA's rights to use of the Canon Mark are derived from Canon International ("CINC") - the owner of the mark.

Named as Defendants are one individual, Albert Hollou ("Hollou") and several New York and New Jersey corporate entities. All of the Defendant entities are alleged to be affiliated wholesalers and retailers of consumer electronics, including cameras. SAC ¶ 19. They are stated to do business primarily online, through various domain names and internet marketplaces including eBay, Amazon and Rakuten. <u>See id.</u> ¶ 17. Defendants are all alleged to maintain the

same principal places of business and make use of Defendant F&E's business infrastructure, including its warehouse, shipping facilities and employees. Id. ¶ 22. All Defendants are represented by the same counsel, and all are united with respect to their positions as to the presently pending motions.

B.      Plaintiff's Claims

Plaintiff alleges causes of action pursuant to the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and the unfair competition laws of the State of New York. Plaintiff does not claim that Defendants market counterfeit products that are confusingly similar to Canon's goods. Instead, Plaintiff's claim that Defendants' marketing of Canon products that, while manufactured by Canon, are not intended for sale in this country. Plaintiff distinguishes what it refers to as "genuine" Canon products (those intended for sale in this country) from "gray market" Canon products (those intended for sale elsewhere).

The sale of goods manufactured by a trademark holder does not, pursuant to the "first sale" doctrine generally violate trademark law. Thus, if "the trademark holder authorized the first sale of the trademarked goods into the stream of or channels of commerce" and "the goods at issue are found to be genuine" there is no trademark violation. See Hallmark Licensing, LLC v. Dickens, Inc., No. 17-CV-2149, 2020 WL 6157007, at *4 (E.D.N.Y. Oct. 21, 2020); see also Abbott Lab. v. Adelphia Supply USA, No. 15-CV-5826, 2015 WL 10906060, at *5 (E.D.N.Y Nov. 6, 2015). However, where, as here alleged, the goods sold are "materially different" from those sold by the holder of the mark, the first sale doctrine does not apply and the re-seller can be held liable for infringement. Abbott Lab. v. Adelphia Supply USA, No. 15-CV-5826, 2019 WL 5696148, at *4 (E.D.N.Y. Sept. 30, 2019). This theory of trademark liability applies where so-called gray market goods are materially different from those sold domestically. Id.  Thus, to

3

prevail here Plaintiff must ultimately prove to the jury that there are legally significant, i.e., "material differences" between what it calls "genuine" and "gray market" Canon products. Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 241 (2d Cir. 2009) (defining gray market goods); Abbott Lab., 2019 WL 5696148, at *4 (explaining when gray market goods are not "genuine" and therefore violate the Lanham Act); see also JUUL Labs Inc. v. Gates Mini Mkt. Corp., No. 21 CV 3240, 2022 WL 987430, at *5 (E.D.N.Y. Feb. 9, 2022), report and recommendation adopted, 2022 WL 1406640 (E.D.N.Y. May 4, 2022); Coty Inc. v. Cosmopolitan Cosmetics Inc., 432 F. Supp. 3d 345, 351 (S.D.N.Y. 2020). In the context of such claims courts apply a "low threshold of materiality, requiring no more than a slight difference which consumers would likely deem relevant when considering a purchase of the product." Zino Davidoff, 571 F.3d at 246.

II. Federal Rule of Evidence 702: Standards

As noted, the parties have thus far offered the testimony of Lamb and Frank. The Court evaluates the admissibility of their testimony pursuant to the standards set forth in Rule 702 of the Federal Rule of Evidence 702. Rule 702 permits testimony by an expert witness "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." FRE 702. The proponent of the expert testimony has the burden of establishing, by a preponderance of the evidence, that the testimony is competent, relevant, and reliable. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592-93, 592 n.10 (1993). The preponderance of the evidence standard applies when evaluating the testimony pursuant to each subsections of Rule 702.

To determine admissibility, a Court must examine: (1) the proposed expert's qualifications; (2) whether the proposed testimony is relevant, that is, whether it would be

4

helpful to the factfinder and (3) whether the proposed testimony is based on reliable data and methodologies. Id.  As to the third inquiry, the Court should consider whether the testimony is "grounded in sufficient facts or data" and is "the product of reliable principles and methods," and whether the witness "has applied the principles and methods reliably to the facts of the case." FUJIFILM North Am. Corp. v. Big Value Inc., 2018 WL 4210132, at *4-5 (E.D.N.Y. Sept. 4, 2018), citing, Wills v. Amerada Hess Corp., 379 F.3d 32, 48 (2d Cir. 2004) (internal quotation marks omitted) (quoting Fed. R. Evid. 702). Decisions as to admissibility are within the broad discretion of the District Court. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). When applying its discretion the Court must keep in mind that the standard for admissibility of expert testimony is "especially broad". Nonetheless, "expert testimony should be excluded if it is speculative or conjectural." FUJIFILM, 2018 WL 4210132, at *4-5 (E.D.N.Y. Sept. 4, 2018).

## DISCUSSION

I.   Lamb

Lamb's testimony was directed toward the issue of material differences between gray market goods and those sold outside of the United States. Lamb's report and his testimony showed his expertise in the fields of brand and product marketing. He has worked as product manager for, inter alia, cameras. In support of his opinion, Lamb relied on studies reported in literature as well as his personal business experience with the precise consumer purchasing decisions issues that Plaintiff will be required to prove in this case. As to facts and data, Lamb relied not only on the pleadings and documents produced in this case, but also on documents showing warranty protection and serial numbers and those he obtained on his own. Lamb has reviewed studies relating to consumer behavior and applied those to this case. Lamb also testified as to his inspection of the type of cameras at issue.

In accord with his expert report Lamb testified, inter alia, that material differences in warranty coverage, appearance of serial numbers and power cord and accessories were material to consumers purchasing Canon products. Lamb's proffered testimony satisfies each prong of Rule 702 by a preponderance of the evidence. To the extent that Defendant cross-examined Lamb on his testimony, that examination attacked the weight of Lamb's opinion, it did not persuade the Court that Lamb's testimony failed under Rule 702. It is recommended that the District Court allow Lamb to testify.

II.  Frank

The Court reaches the opposite conclusion with respect to Frank that it has reached with respect to Lamb. Foremost, the Court holds that Frank's offered opinion will not, in any way (much less by a preponderance of the evidence), assist the jury in its function. While the goal of Frank's testimony was, to say the least, unclear, it appears that his testimony was offered to show that results of Frank's own internet searches in 2017 and 2021 result in consumers being offered genuine Canon goods and not imported goods. Frank appears to have concluded that consumers would not be confused when they searched online for Canon's products. These conclusions have nothing to do with the claims herein. As discussed, this case is based upon the legal theory that gray market goods are materially different than those sold for sale in this country. Frank nowhere touched on this issue in his testimony. The word "materiality" does not even appear in his opinion. Instead, Frank seeks to go before the jury and discuss the results of searches that he conducted on Amazon and eBay's website using different combinations of the words "Canon" and "import" and "imported." Any conclusions reached as a result of these searches has absolutely no bearing on the issues in this case. Accordingly, Frank's testimony fails on the most fundamental level - he can offer no opinion that is relevant to the issues that the jury will be

6

called upon to decide. For this reason alone Frank should not be allowed to testify in this matter and confuse the jury.

Even if Frank's opinion was relevant to the subject of this case - and it clearly is not - his online searches should not be presented to the jury because they are based on neither sufficient facts nor data. Nor do they evidence application of any reliable principle or method to the facts of this case. Frank's testimony betrayed any knowledge of facts relevant to this case. Indeed, he testified that he had no knowledge of the meaning of gray market goods prior to this case (much less consumer perceptions of such goods), noting that his initial online searches using that term yielded an assortment of grey golf umbrellas. In his effort to gain a grasp of the facts in this matter Frank did nothing more than try differently worded internet searches, with and without the use of quotation marks. Ultimately, Frank's proffered expert opinion relies on nothing more than searches for Canon products conducted on Amazon and eBay in 2017 and 2021. Frank readily admitted, in his report and at the hearing, that research conducted in 2017 was never even concluded. Additionally, Plaintiff's counsel pointed out numerous mistakes in calculation and oddities in expressing conclusions - including stating that if one were to deduct a certain number of results, one would be left with 100% of some other number. Frank's testimony in this regard was completely confusing and unhelpful. More importantly, Frank has no knowledge of how Amazon and eBay algorithms work, whether searches yield different results on different devices, whether he or Amazon limited the results of his searches, and whether search results are influenced by computer learning regarding the searcher. When asked to support his apparent opinion that searches conducted on different devices at different times will consistently yield the same results Frank made reference to a completely unsupported and inapplicable theory of

7

"randomization". In light of the rest of his testimony it appears needless to say, that this theory and any application to this case was explained neither in court nor Frank's expert report.

In sum, Frank's opinions had no bearing on the matters at issue in this case and to the extent that he offered any opinions at all, they were unsupported by any relevant expertise, data or facts herein. Frank should not be allowed to testify in this case.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.  Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

**SO ORDERED.**

Dated: Central Islip, New York
June 6, 2023

                                         /s/ Anne Y. Shields
                                         ANNE Y. SHIELDS
                                         United States Magistrate Judge